IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:09-CV-41-D

| | |
|---|---|
| THOMAS LEE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Thomas Lee Smith challenges the final decision of defendant Commissioner of Social Security ("Commissioner") determining that he was no longer entitled to Disability Insurance Benefits ("DIB"). The case is before the court on the parties' respective motions for judgment on the pleadings (D.E. 16, 17). Both parties submitted memoranda in support of their respective motions (D.E. 16-1, 18). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

### I. BACKGROUND

#### A. Standards for Determination of Disability Cessation

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* (d)(3).

Following a determination that an individual is disabled and therefore entitled to DIB, his continued entitlement is subject to periodic review. *See* 20 C.F.R. § 404.1594(a). Such entitlement ends if the disability is determined to have ended—that is, if there is a finding supported by substantial evidence that "the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling." 42 U.S.C. § 423(f).

The Regulations specify a number of factors that must be considered in determining whether a disability has either ended or continues, including the key factor of medical improvement. *See* 20 C.F.R. § 404.1594(a). Medical improvement is defined as "any decrease in the medical severity of [an individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [an individual was] disabled or continued to be disabled." *Id.* (b)(1). As this definition implies, to determine whether there has been medical improvement a comparison is made between the individual's current condition and his condition at the time of the most recent favorable medical decision that the individual was disabled or continued to be disabled, the so-called comparison point date or CPD. *Id.* (b)(7). A determination that there has been medical improvement must be based on improvement in the symptoms, signs, or laboratory findings associated with the impairments underlying the disability. *Id.* (b)(1).

2

Medical improvement in an individual's impairments alone does not merit a determination that he is no longer disabled. Rather, the medical improvement must be related to the individual's ability to work and there usually must also be a showing that the individual is currently able to engage in substantial gainful activity. *Id.* (a), (b)(3). In addition, the Regulations provide two groups of exceptions to medical improvement whereby an individual's disability can be found to have ended even though medical improvement has not occurred. *Id.* (d), (e).

The Regulations set out an eight-step sequential analysis for evaluating medical improvement and the other specified factors to determine whether an individual's disability continues. *See id.* (f)(1)-(8). It provides, in relevant part, as follows:

> (1) Are you engaging in substantial gainful activity? If you are . . . , we will find disability to have ended . . . .
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"]? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement . . . ? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work . . . ; i.e., whether or not there has been an increase in the residual functional capacity ["RFC"][1] based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in . . . [the two groups of exceptions to

---

[1] RFC is the most an individual can still do despite his physical and mental limitations. *See* 20 C.F.R. § 404.1545(a)(1).

3

medical improvement][2] apply.  If none of them apply, your disability will be found to continue.  If one of the first group of exceptions to medical improvement applies, see step (6).  If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended.  The second group of exceptions to medical improvement may be considered at any point in this process.

(6)  If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe . . . .  This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the [RFC] assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7).  When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature.  If so, you will no longer be considered to be disabled.

(7)  If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity . . . .  That is, we will assess your [RFC] based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8)  If you are not able to do work you have done in the past, we will consider one final step.  Given the [RFC] assessment and considering your age, education and past work experience, can you do other work?  If you can, disability will be found to have ended.  If you cannot, disability will be found to continue.

*Id.*[3]

At step eight, the Medical-Vocational Guidelines or so-called grid rules are used.  20 C.F.R. pt. 404, subpt. P, app. 2.  They indicate whether an individual is "disabled" or "not disabled" based on the exertional level of work the individual is found to be able to perform as part of his RFC and his vocational profile, comprised of his age, education, and past work experience.  *Id.* § 200.00(a). The decision of "disabled" or "not disabled" specified in the grid rules reflects an administrative

---

[2] The exceptions are set out in 20 C.F.R. § 404.1594(d) and (e).  The exceptions are not relevant to this case.

[3] Steps 1, 2, 6, 7, and 8 in this analysis correspond to varying degrees to steps 1, 3, 2, 4, and 5, respectively, in the five-step sequential analysis used to make initial determinations on disability.  *See* 20 C.F.R. § 404.1520(a)(4).

4

determination as to whether sufficient jobs exist in the national economy for the individual given his exertional level and vocational profile. *Id.* § 200.00(b). If an individual can perform all or substantially all of the exertional demands at a given exertional level, the grid rule directs the conclusion on disability—that is, the conclusion of "disabled" or "not disabled" indicated by the rule has controlling effect. Soc. Sec. Ruling 83-11, 1983 WL 31252, at *1 (1983).[4] If the individual cannot perform all or substantially all the exertional demands or has non-exertional limitations, the grid rules are used as a framework for decision making, subject to certain exceptions. *See* Soc. Sec. Ruling 83-12, 1983 WL 31253, at *1 (1983); Soc. Sec. Ruling 83-14, 1983 WL 31254, at *1 (1983).

The Act requires that a disability cessation determination be made on "the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f). The determination must also be based on "all the evidence available in the individual's case file, including new evidence concerning the individual's prior or *current* condition which is presented by the individual or secured by the [Commissioner]." *Id.* (emphasis added). For purposes of review by an Administrative Law Judge ("ALJ") or other adjudicator of an initial determination that a disability has ceased, the individual's "current" condition refers to his condition as of the date on which his disability had been found to cease, and the propriety of the determination should be adjudicated as of that date, not as of the date of any subsequent review. *See Johnson v. Apfel*, 191 F.3d 770, 774-76 (7th Cir. 1999) (discussing

---

[4] Rulings are interpretations of the Act by the Social Security Administration that, while lacking the force of law, are entitled to deference unless they are clearly erroneous or inconsistent with the law. *Pass*, 65 F.3d at 1204 n.3 (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.1989)).

5

favorably Acquiescence Ruling 92-2(6), 1992 WL 425419, at *2 (Soc. Sec. Admin. 17 Mar. 1992) ("[The Soc. Sec. Admin.] interprets the term "current," as used in the statutory and regulatory language concerning termination of disability benefits, to relate to the time of the cessation under consideration in the initial determination of cessation.")); *see also Goodwater v. Barnhart*, 579 F. Supp. 2d 746, 763 (D.S.C. 2007) ("Although the Fourth Circuit has not directly[5] ruled on the meaning of 'current' in the context of disability cessation determinations, the Social Security Administration (SSA) interprets 'current' as relating to the claimant's condition at the initial determination of cessation, not the ALJ's hearing or reconsideration determination . . . ."), *aff'd*, 263 Fed. Appx. 338 (4th Cir. 2008). *But see Difford v. Secretary of Health & Human Services*, 910 F.2d 1316, 1319-20 (6th Cir.1990) (holding that adjudication of disability must occur through the time of the ALJ hearing).[6]

### B.     Procedural History

Plaintiff was initially awarded DIB for lung cancer on 24 August 1998 with a disability onset date of 13 May 1998. Transcript of Proceedings ("Tr.") 22, 30. On 13 May 2004, it was determined

---

[5] *See Lever v. Barnhart*, 77 Fed. Appx. 178, 179 (4th Cir. 2003) (affirming district court's order in D.S.C. case no. CA-01-3246 that rejected holding in *Difford,* cited immediately above*).*

[6] The court notes that the allocation of the burden of proof in benefits termination cases is a matter with which the courts have seldom dealt. *See* Carolyn A. Kubitschek, *Social Security Disability Law & Procedure in Fed. Court* § 2:14, Termination of Benefits Cases (2010) ("The case law says almost nothing about the apportionment of the burden of proof in termination of benefits cases."); *see also Johnson v. Astrue*, No. 1:08cv368-WC, 2009 WL 1955305, at *2 (M.D. Ala. 2009) (noting that "the allocation of the burden of proof appears muddled in [benefits termination cases]" and that "[t]he Eleventh Circuit does not appear to have clearly addressed this issue"). The courts that have addressed the issue have reached differing conclusions. *Compare Wilson v. Barnhart*, 129 Fed. Appx. 912, 914 (5th Cir. 2005) (holding that "[i]n a benefits termination proceeding, the Commissioner bears the burden of proof"), *with Mables v. Sullivan*, 812 F. Supp. 886, 888 (C.D. Ill. 1993) (holding that "the claimant bears the burden of showing by medical evidence that he/she is disabled" in a benefits termination case, and the Commissioner has the burden "to show that medical improvement has taken place and is related to plaintiff's ability to work"). The Fourth Circuit has not directly addressed the issue. Here, because the allocation of the burden of proof has not been raised by the parties and is not material to the court's analysis, the court declines to address it.

6

Case 7:09-cv-00041-D   Document 23   Filed 07/06/10   Page 6 of 19

that plaintiff was no longer disabled as of 1 May 2004 and that his benefits would end on 1 July 2004.[7] *Id*. 22, 31, 33. The basis of this cessation determination was that plaintiff's medical records showed no recurrence of lung cancer and that his coronary artery disease, hypertension, and history of alcohol and drug abuse were not severe enough to be disabling. *Id*.

Plaintiff filed a request for reconsideration (*id*. 36), which was denied on 28 November 2004 (*id*. 32, 39). Thereafter, plaintiff filed a timely request for a hearing before an ALJ (*id*. 50), and hearings were held on 1 December 2005 (*id*. 506)[8] and 16 August 2006 (*id*. 510). In a written decision dated 14 March 2007, the ALJ found that plaintiff was not disabled on 1 May 2004, as initially determined, and that he was therefore not entitled to DIB. *Id.* 19-28.

On 11 April 2007, plaintiff timely requested review of the ALJ's decision by the Appeals Council. *Id.* 17-18. On 13 March 2008, the Appeals Council received into the record additional medical evidence (*id.* 447-502) and written argument (*id.* 503-05) submitted by plaintiff's counsel (*id.* 13), but on 31 October 2008 denied plaintiff's request for review (*id.* 10-13). In doing so, the Appeals Council noted an error in the ALJ's decision, which it indicated did not affect the outcome of the case, as discussed further below. *Id.* 11. Plaintiff commenced this proceeding for judicial review on 14 April 2009 in accordance with 42 U.S.C. § 405(g). *See* Compl. (D.E. 4).

## C.    Findings of the ALJ

At the onset of his initial period of disability from lung cancer on 13 May 1998, plaintiff was 40 years old. Tr. 30, 79. He was 46 years old at the time his disability was found to have ceased,

---

[7] The Commissioner refers to 1 July 2004, the date that plaintiff's benefits terminated, as the relevant date for determining whether plaintiff was still disabled. *See* Def.'s Mem. 16. However, the relevant date for review of the cessation determination is the date as of which plaintiff's disability was found to have ended, 1 May 2004, not the date on which his benefits ended. *See Goodwater*, 579 F. Supp. 2d at 749.

[8] This first hearing was continued by the ALJ to allow plaintiff time to secure representation. *Id*. 508.

and 48 and 49 at the time of the administrative hearings in 2005 and 2006, respectively. *See id.* 79. Prior to his disability, plaintiff worked as a machine operator, tire mechanic, and forklift driver. *Id*. 27, 325, 515. Following his initial disability determination, plaintiff was diagnosed with unstable angina and severe left main coronary artery disease, having had coronary artery bypass grafting. *Id*. 24 ¶ 4.

The ALJ first found that the most recent favorable medical decision finding plaintiff disabled was the determination on 24 August 1998 that plaintiff had the medically determinable impairment of lung cancer, making this the comparison point date. *Id*. 24 ¶¶ 1-2. Applying the eight-step sequential analysis, the ALJ found at step one that plaintiff was not engaged in substantial gainful activity as of the date his disability was found to have ended, 1 May 2004. *Id*. 24 ¶ 3. At step two, the ALJ found that plaintiff did not as of that date have an impairment or combination of impairments that met or equaled a listing. *Id*. 24 ¶ 5. Specifically, the ALJ found that plaintiff's lung condition no longer met a listed impairment based on the 6 July 2004 opinion of plaintiff's treating oncologist, Mark A. Socinski, M.D., that plaintiff had "no signs or symptoms of lung cancer after 6 years" and was "'likely cured of his lung cancer.'" *Id*. The ALJ also found that plaintiff's coronary artery disease with unstable angina, for which he underwent coronary artery bypass grafting on 2 July 2001, did not meet or equal a listed impairment. *Id*.

At step three, the ALJ concluded that, as of 1 May 2004, there had been medical improvement in plaintiff's lung condition based on Dr. Socinski's July 2004 findings. *Id*. ¶ 6. At step four, the ALJ concluded that the medical improvement in plaintiff's lung condition related to his ability to work because this condition no longer met or medically equaled a listing. *Id*. 25 ¶ 7. Because the ALJ found that plaintiff's medical improvement related to his ability to work, the ALJ

8

did not apply step five but moved to step six, as provided in the Regulations. *See* 20 C.F.R. § 404.1594(f)(4). At step six, the ALJ found that as of 1 May 2004 plaintiff's cardiovascular condition was a severe impairment—that is, it imposed more than a minimal limitation on plaintiff's ability to perform basic work activities. Tr. ¶ 8; 20 C.F.R. § 404.1520(c); *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). At step seven, the ALJ determined that as of 1 May 2004 plaintiff had the RFC to perform the full range of light work (*i.e.*, he could lift up to 20 pounds occasionally and 10 pounds frequently, and could sit, stand, and/or walk for 6 hours each in an 8-hour work day),[9] but that he was unable to do past relevant work. Tr. 27 ¶¶ 9, 10; 28 ¶ 14.

At step eight, the ALJ found that plaintiff had the following vocational profile: he was in the younger individual age category, had a limited education, and had past relevant work at the unskilled level. *Id.* 27 ¶¶ 11, 12, 13; *see* 20 C.F.R. § 404.1563(c) (definition of younger age category), .1564(b)(3) (definition of limited education), .1568(a) (definition of unskilled work). Based on this profile and plaintiff's RFC to perform light work, the ALJ found the applicable grid rule to be 202.16, which specifies a conclusion of "not disabled." Tr. 28 ¶ 14. The ALJ gave this conclusion controlling effect because plaintiff had the RFC to perform the full range of light work and had no severe non-exertional limitations. *Id.* He therefore found that as of 1 May 2004 plaintiff had the ability to perform a significant number of jobs in the national economy. *Id.* 27 ¶ 14. He concluded that as of that date plaintiff was not disabled. *Id.* 28 ¶ 15.

In its letter denying review, the Appeals Council stated that in relying on grid rule 202.16 the ALJ erred because that rule applies to individuals who are illiterate or unable to communicate in

---

[9] *See* 20 C.F.R. § 404.1567(b) (defining light work, which is stated to have the same meaning as in the *Dictionary of Occupational Titles* ("*DOT*")); *DOT* app. C § IV(4th ed. rev. 1991) (defining light work and other exertional categories).

9

English, whereas, according to the Appeals Council, the record contains no evidence that plaintiff is illiterate or unable to communicate in English. *Id.* 11. It noted that the correct grid rule was 202.17, which applies to individuals with limited education. *Id.* It concluded, though, that both rules indicated the same conclusion of "not disabled." *Id.*

## II.  DISCUSSION

### A.  Standard of Review

The standard of review under 42 U.S.C. § 405(g) applies to review of disability cessation determinations. *See Marker v. Finch*, 322 F. Supp. 905, 909 (D.C. Del. 1971) (holding that "the standards to be applied by the Court in reviewing a termination of benefits do not differ materially from those applied in reviewing a denial of benefits"); *see also Goodwater*, 579 F. Supp. 2d at 761 (applying 42 U.S.C. § 405(g) to review of Commissioner's termination of individual's termination of SSI benefits and DIB). Under that provision, judicial review of a final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g.*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ (1) erroneously assessed plaintiff's RFC and (2) applied the incorrect grid rule. The court addresses each of these grounds in turn below.

### C. RFC Determination

Plaintiff contends that in determining him to have the RFC to perform the full range of light work as of 1 May 2004, the ALJ improperly failed to consider evidence showing that he lacked that

capacity due to his cardiovascular impairment.[10] As a result, plaintiff argues, the RFC determination is not supported by substantial evidence. The court disagrees with plaintiff's contention.

In his decision, the ALJ himself identified substantial evidence supporting his RFC determination. This evidence consisted, in part, of five visits by plaintiff with treating physicians, both before and after 1 May 2004, that showed plaintiff's cardiovascular condition to be largely normal.

The first of these visits was on 9 February 2004 with plaintiff's cardiologist, Garrett L. Rogers, M.D. As the ALJ noted, plaintiff's blood pressure was at that time controlled, and a nuclear stress test showed, among other things, that he had an ejection fraction of 65%.[11] Tr. 25 ¶ 9. Dr. Rogers stated that the "nuclear stress test looked great." *Id.* 277.

The next visit discussed by the ALJ was to plaintiff's family physician, Gary S. Crawford, M.D., on 12 July 2004. As discussed by the ALJ, plaintiff complained of chest pain, but an electrocardiogram (*i.e.*, EKG) showed nothing acute and heart sounds were regular. *Id.* 25 ¶ 9, 311. The ALJ then addressed plaintiff's visit with Dr. Rogers on 27 June 2005, at which Dr. Rogers found plaintiff asymptomatic for coronary artery disease (notwithstanding some occasional shortness of breath). *Id.* 25 ¶ 9, 343.

The next visit noted by the ALJ occurred on 1 August 2005 and was with Dr. Crawford. *Id.* 26 ¶ 9. Plaintiff denied chest pain, had a regular heart rate and rhythm, had no edema[12] of the

---

[10] Plaintiff does not assert, nor does the court find, that the ALJ erred in his determination that plaintiff's lung cancer was no longer an impairment that supported a finding of continued disability.

[11] The ejection fraction measures the effectiveness of the heart in pumping blood, with 65% being normal. *See Dorland's Illustrated Medical Dictionary* ("*Dorland's*") 751, entry for "fraction, ejection" (31st ed. 2007).

[12] Edema is the presence of abnormally large amounts of fluid. *Dorland's* 600, entry for "edema."

12

extremities, and had a normal ejection fraction on a recent nuclear stress test. *Id.* 26 ¶ 9, 412-13. Lastly, the ALJ discussed plaintiff's visit with Dr. Crawford on 14 July 2006. *Id.* 25 ¶ 9. At that time, plaintiff had no significant chest or exertional chest pain despite occasional shortness of breath. *Id.* 25 ¶ 9, 390.

Following his review of these visits, the ALJ found that the medical evidence showed as of 1 May 2004 that plaintiff's cardiovascular condition was stable. *Id.* 26 ¶ 9. He found specifically that plaintiff had stable blood pressure and no exertional chest pain or significant chest pain. *Id.* The evidence the ALJ reviewed constitutes substantial evidence supporting these specific findings.

In addition to the treatment records, evidentiary support for the RFC determination is found in a 6 May 2004 physical RFC assessment of plaintiff by a non-examining consultant, which the ALJ also discusses. *Id.* 26 ¶ 9, 281-90. The assessment determined that plaintiff could perform light work *Id.* 26 ¶ 9, 282. The ALJ stated that he credited this assessment because it is supported by the medical evidence. *Id.* Such reliance by the ALJ on the assessment was proper. *See* 20 C.F.R. § 404.1527(f); Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2-3 (2 July 1996).

Also supporting the RFC determination is the absence of any report by a cardiologist that plaintiff was unable to work. Tr. 27 ¶ 9. The ALJ notes this fact as well in his RFC analysis. *Id.*

There are other records in the Transcript of this case not discussed by the ALJ that also support his RFC determination, including notes by plaintiff's treating physicians showing essentially normal cardiovascular findings and information from plaintiff about his extensive daily activities. *See, id., e.g.*, 98-99, 104-07, 268-69. Notable among these is the report on a 12 April 2004 appointment with Dr. Rogers, the treatment session closest in time to the 1 May 2004 cessation date,

13

at which Dr. Rogers found that plaintiff was doing well and that his coronary artery disease was asymptomatic. *Id*. 268-69.

It is apparent that the ALJ did give some weight to plaintiff's cardiovascular condition. As indicated, he found it be a severe impairment within the meaning of the Regulations and that plaintiff's RFC prevented him from doing his past relevant work. *Id.* 26 ¶ 8, 27 ¶ 10.

Contrary to plaintiff's contention, the record does not contain evidence that mandates a determination that plaintiff lacked the RFC to perform a full range of light work. For example, plaintiff points out that on 9 January 2004, a month before the 9 February 2004 visit with Dr. Rogers, plaintiff had been hospitalized for cardiovascular-related problems. Plf.'s Mem. 9; Tr. 249, 253. But that fact does not nullify the negative findings at the February 2004 visit.

Plaintiff also notes that at the 12 July 2004 visit he reported chest tightness and shortness of breath upon exertion. Plf.'s Mem. 9; *id.* 311. Again, though, these symptoms do not nullify the negative findings from the visit. Notably, plaintiff also reported at that visit that he had resumed smoking marijuana and drinking a six-pack of beer each day, and had stopped taking medication for his high blood fat levels. *Id.* 311.

Plaintiff also contends that he showed ongoing lower extremity edema. Plf.'s Mem. 9-10. In support, he cites to a record of his 9 January 2004 hospital visit, stating that he had edema. Tr. 249. But at his 9 February 2004 visit with Dr. Rogers he showed no signs of bilateral edema. *Id.* 276.

In addition, plaintiff cites to a 3 March 2004 visit with Dr. Crawford at which he showed edema of the lower extremities. Plf.'s Mem. 9-10; *id.* 316. Twelve days later, though, on 15 March 2004, a visit with Dr. Rogers revealed no bilateral pedal edema. *Id.* 349. Dr. Rogers stated that

14

plaintiff "has been doing well from a cardiac standpoint." *Id.* Plaintiff did report that he had stopped taking his blood fat medication due to leg swelling, and Dr. Rogers switched him to a different medication, as plaintiff himself acknowledges. *Id.* 350. At the appointment on 12 April 2004 previously referenced, Dr. Rogers noted that there was no bilateral bipedal edema. *Id.* 268.

Plaintiff also relies on a 29 October 2004 hospital visit by plaintiff. Plf's Mem. 10; Tr. 335. But plaintiff was diagnosed with an acute febrile respiratory infection. Tr. 335. The examination of his cardiovascular system showed that he had regular rate and rhythm, and no pedal edema. *Id.*

Regarding his 14 July 2006 visit with Dr. Crawford, plaintiff notes that he reported left arm pain and speculates that this was a symptom of angina. Plf.'s Mem. 10 (referring to Tr. 390). But Dr. Crawford made no such finding. Tr. 390. What Dr. Crawford did find, as indicated, was that plaintiff had no significant chest or exertional chest pain despite occasional shortness of breath. *Id.*

Plaintiff also cites to a physical RFC questionnaire completed by Dr. Crawford restricting him to lifting less than 10 pounds occasionally, 10 pounds rarely, and 20 or more pounds never. *Id.* 451. These limitations are more restrictive than those for light work. *See* 20 C.F.R. § 404.1567(b). But this assessment was completed on 24 September 2007, more than three years after the putative disability cessation date. It is therefore too remote in time to be relevant to the ALJ's decision. *See Goodwater*, 579 F. Supp. 2d at 766 (holding that "the issue before the ALJ at [the time of the hearing] (as well as before this Court) is not whether Plaintiff's impairments may have later re-achieved disabling severity, but whether substantial evidence supports the decision that her impairments were not of disabling severity as of [the cessation date]"); *see also Rosenlund v. Astrue*, No. 8:08-cv-1457-T-TBM, 2009 WL 3053698, at *5 (M.D. Fla. 18 Sep. 2009) (concluding that even though medical records showed that plaintiff had serious health problems in 2006 and 2007, these

15

records "simply do not speak to the ALJ's findings that, as of June 1, 2005, Plaintiff's condition no longer satisfied any listing and that the medical improvement demonstrated by that finding related to his ability to work"). In contrast, as indicated, an RFC assessment performed by a consultant on 6 May 2004, within a few days of the purported disability cessation date of 1 May 2004, found plaintiff capable of performing light work. Tr. 282.

The 24 September 2007 RFC questionnaire by Dr. Crawford constitutes a portion of the new evidence plaintiff submitted to the Appeals Council. This evidence as a whole has the same deficiency of temporal remoteness from the 1 May 2004 putative disability cessation date as the questionnaire, covering the period from 20 July 2007 to 9 June 2008.[13] *See id.* 447-502. The new evidence therefore does not provide any support to plaintiff's challenge to the ALJ's RFC determination.

For this and the other reasons stated, plaintiff's challenge to the ALJ's RFC determination fails. The court concludes that it was determined in accordance with applicable law and is supported by substantial evidence.

### D. Grid Rule Application

Plaintiff next contends that the ALJ applied an incorrect grid rule in determining that his disability ended on 1 May 2004. He argues that the ALJ should have used grid rule 201.17. It applies to an individual who has the RFC for only sedentary work, and is illiterate or unable to communicate in English. (The other vocational factors under grid rule 201.17 are that the individual

---

[13] The additional evidence consists of records from Trinity Family Medicine, P.A., Dr. Crawford's group, for the period 31 July 2007 to 11 March 2008 (Tr. 447-71); Alternative Care Treatment Systems for 20 July 2007 to 7 August 2007 (*id.* 472-88); and Center for Scoliosis & Spinal Surgery, PLLC for 14 January 2008 to 9 June 2008 (*id.* 489-502).

be in the younger age category and have prior work at the unskilled level, factors the ALJ found plaintiff to have and which plaintiff does not dispute.) Plaintiff's contention is without merit.

As discussed previously, substantial evidence supports the ALJ's conclusion that plaintiff had the RFC for light work. The ALJ therefore did not err by applying a grid rule for an individual with that RFC, rather than one limited to sedentary work.

Plaintiff's RFC for light work renders it immaterial for purposes of the grid rules whether he is deemed illiterate or to have a limited education, as the Appeals Council noted. Assuming an RFC for light work, as well as the undisputed factors of younger age category and unskilled prior work, the applicable grid rule is 202.16 if plaintiff is deemed illiterate. 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.16. If he is deemed to have a limited education, the applicable grid rule is 202.17. *Id.* § 202.17. Both grid rules 202.16 and 202.17 specify a conclusion of "not disabled."

The ALJ, of course, applied grid rule 202.16, rather than rule 202.17. Application of rule 202.16 appears clearly to have been an inadvertent error because the ALJ found plaintiff to have a limited education. Tr. 27 ¶ 12.

Plaintiff's contention that the ALJ should have found that he was illiterate, rather than of limited education, is baseless. Under the Regulations, a limited education is generally considered "a 7th grade through 11th grade level of formal education." 20 C.F.R. § 404.1564(b)(3). Plaintiff finished the 8th grade. Tr. 514. Substantial evidence therefore supports the ALJ's finding that plaintiff has a limited education.[14]

---

[14] Even if plaintiff were deemed to be restricted to sedentary work, his limited education would render applicable a grid rule, 201.18, that directs a conclusion of "not disabled" (assuming, of course, the younger individual age and unskilled prior work categories). 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.18.

Thus, both bases upon which plaintiff advocates application of grid rule 201.17—an RFC limited to sedentary work and his being illiterate—are unfounded. The contention therefore fails in its entirety.

E.   **Additional Medical Evidence Submitted to the Appeals Council**

As indicated, plaintiff submitted, and the Appeals Council admitted into the record, additional medical evidence, along with an explanatory letter from plaintiff's counsel, that was not before the ALJ. The court has considered whether the additional evidence required remand to enable the ALJ to evaluate and make findings based on the record as supplemented by this additional evidence prior to its review of the ALJ's decision.

Remand is required if the additional evidence is "new," meaning that it is not cumulative or duplicative, and "material," meaning that there is a reasonable possibility that the evidence would have produced a different result.[15] *See King v. Barnhart*, 415 F. Supp. 2d 607, 611 (E.D.N.C. 2005) (discussing application of these standards in *Wilkins*, 953 F.2d at 94-96 and *Thomas v. Comm'r of Soc. Sec.*, 24 Fed. Appx. 158, 2001 WL 1602103 (4th Cir. 17 Dec. 2001) where additional evidence required remand). "To be material, the evidence must 'relate to the claimant's condition during the relevant time period encompassed by the disability application under review.'" *Johnson,* 191 F.3d at 776 (quoting *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989)).

As discussed above, these records are not material because they do not relate to plaintiff's condition at the time his disability allegedly ended. These records relate to plaintiff's medical conditions and treatment three to four years after the 1 May 2004 disability cessation date.

---

[15] These standards are included in those that govern whether the Appeals Council should consider evidence submitted to it that was not before the ALJ. *See Wilkins v. Secretary of Health and Human Services*, 953 F.2d 93, 95-96 (4th Cir. 1991). Neither party here contests the Appeals Council's consideration of the additional evidence and the court finds that it was proper.

Accordingly, the court concluded that remand to the ALJ for consideration of these records was not required before it reviewed the ALJ's decision.

### III. CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's final decision is based on the proper legal standards and is supported by substantial evidence. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED and the final decision of the Commissioner is AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 6th day of July 2010.

James E. Gates
United States Magistrate Judge